IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.  16-03024-01-CR-S-MDH |
| | ) | |
| SAFYA ROE YASSIN, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION TO REVOKE OR AMEND THE
## MAGISTRATE'S ORDER DETAINING DEFENDANT

Comes now Defendant, Safya Roe Yassin, by and through the undersigned attorney, pursuant to 18 U.S.C. § 3145(b), and hereby moves this District Court to conduct a de novo review of the facts in this case relating to the Magistrate's order of February 26, 2016 (Docket Entry 25), and revoke this order of detention.  By virtue of this order, Ms. Yassin is currently detained awaiting the resolution of the above-titled criminal case.  Ms. Yassin moves this Court to release her on bond during the pendency of the above-titled criminal trial.  In support of this motion, Ms. Yassin states as follows.

### *PROCEDURAL HISTORY*

Ms. Yassin was originally charged by a criminal complaint on February 17, 2016. (Docket Entry 1).  On February 19, 2016, the government filed a motion for pretrial detention, vaguely alluding to the factors of 18 U.S.C. § 3142(g), which include weight of the evidence and defendant's history and characteristics.  (Docket Entry 13).

Ms. Yassin, in response to the government's motion, filed a response outlining her significant ties to the community, her severe physical limitations, and the fact that there are conditions the Court could order that would ensure the safety of the community, specifically the condition of no use of a computer. (Docket Entry 16).

On January 11, 2016, an arraignment was held in the above styled case, formally charging Ms. Yassin in one count, that being intentionally transmitting in interstate commerce a threat, in violation of 18 U.S.C. § 875(c), a class D Felony. (Docket Entry 18). On this same date a detention hearing was held before the Magistrate Judge.

At this detention hearing, the government called Special Agent Laine, the affiant in the complaint on file with the Court, who testified to the assertions that can be found in the complaint. Through Agent Laine, the government offered four exhibits (numbered one through four). These documents were of additional tweets that had been allegedly posted by Ms. Yassin. While the tweets themselves may have been provocative, nothing in the tweets suggested additional crimes and were generalized statements of religious/political beliefs.

The government spent a great deal of time on Exhibit 4, which was a tweet that stated "anyone 'rading' me will be shot on site." Not surprisingly, the government used this exhibit as the basis of their argument for dangerousness.

However, with Exhibit 4, what the government did not focus on was that this statement was a response to the comment "looks like the kuffar are going to raid you."

2

Kuffar (or Kafir) not being a term that means law enforcement, but rather is a Arabic term meaning "unbeliever."

A fifth exhibit was accepted by the Court over Ms. Yassin's objection that purported to be a conversation between Ms. Yassin and an unknown person, in which they discuss the ease of purchasing firearms.

On cross examination, Agent Laine stated that this alleged threat had occurred well over five months prior to this hearing, and that the FBI had had almost daily surveillance of Ms. Yassin that entire time. Agent Laine stated that during their surveillance they never saw Ms. Yassin meet with anyone considered suspicious, nor received any intelligence of suspicious bank activity or phone calls. Agent Laine was aware that Ms. Yassin was disabled and was raising two children, and at least one was special needs. Agent Laine was aware of Ms. Yassin's online autism advocacy.

After the government rested their case, Ms. Yassin called Omar Yassin, Ms. Yassin's father to the stand. Mr. Yassin confirmed the severe medical limitations of Ms. Yassin, having firsthand information since he has lived with Ms. Yassin since her work related injury in 2007. Mr. Yassin stated that Ms. Yassin has ongoing spinal issues and that due to her medical issues must self-administer a catheter. (Transcript, p. 25) (a copy of this transcript is attached for the Court's convenience as Attachment A). Mr. Yassin also testified as to Ms. Yassin's 13 year old son having autism. Mr. Yassin further

3

testified that Ms. Yassin has been homeschooling her children in light of ongoing bullying issues that have arisen from anti-Muslim sentiment. (Transcript, p. 27).

At the end of all evidence, the government argued that Ms. Yassin's violent rhetoric indicated that she was a danger and in light of the grand jury finding probable cause and the recommendation of the pretrial office, that Ms. Yassin should be detained. (Transcript, pp. 29-30).

The defense argued that the government's case from what has been presented is weak, that the evidence so far shows that Ms. Yassin retweeted a statement that indicated that mujahidelectric@ccybercaliphate "wanted to kill" a named person. (Transcript, p. 31). There is no evidence that Ms. Yassin wanted to kill said person, that she merely presented this statement on her twitter account, and that the government has taken the phrase "wanted to kill" completely out of context to bolster their case. Furthermore, in light of *Elonis v. United States,* there were serious First Amendment issues with the government case, especially in light of the fact that Ms. Yassin told investigators in June of 2015 that she saw herself as a journalist.

The defense continued by arguing that Ms. Yassin does not pose a flight risk, nor does she pose a danger, however, that the Court, like it has done in the past in cases much more serious than a Class D felony, can set a condition of no unauthorized use of a computer; this condition would answer any issues regarding Ms. Yassin's online presence. (Transcript, p. 33).

On February 26, 2016, the Magistrate ordered that Ms. Yassin be detained without bond awaiting trial. (Docket Entry 25).

> . . . Based on the evidence presented at the hearing, there are no conditions that the Court can impose that would reasonably assure the safety of other person[s] or the community.
>
> The factors to be considered by the Court in determining whether the defendant should be detained pending trail are enumerated in section 3142(g). Regarding potential danger to the community, the Court notes the nature of the instant offense, defendant's prior arrest for similar charges, multiple convictions for Threatening Crime with Intent to Terrorize, mental health history, use of a computer to facilitate the alleged offense, and safety concerns for the community and specific individuals.
>
> Based on all the foregoing, the Court finds by clear and convincing evidence that the defendant is a danger to the community.

(Docket Entry 25).

Ms. Yassin remains in the custody of the United States Marshals.

### *LEGAL AUTHORITY*

Pursuant to 18 U.S.C. 3145(b), this Court retains the authority to review a Magistrate's order detaining a defendant in a federal criminal case. It is Ms. Yassin's contention that this order of detention is neither based on mandatory legal authority, nor consistent with the policies of the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*. Accordingly, Ms. Yassin asks this Court to revoke or amend the Magistrate's order of detention.

As the Eighth Circuit stated in *United States v. Holloway*, 781 F.2d 124 (8th Cir. 1986), "(i)n drafting the 1984 Act, Congress sought to balance the important interest of the

5

defendant in his freedom prior to conviction against the societal interests of having him appear for trial and in community safety. The statute favors release over detention for the majority of accused persons, and also specifically forbids the use of prohibitively high money bail as a pretext for detention." *Id*. at 125. Indeed, 18 U.S.C. § 3142(f) mandates that a defendant not be detained unless there is "clear and convincing evidence" that a defendant presents a danger to the community. 18 U.S.C. 3142(f) (2015). Thus, the general policy favoring release underlying the Bail Reform Act of 1984 applies to Ms. Yassin unless there exists clear and convincing evidence that Ms. Yassin is an ongoing danger to the community or flight risk.

In this case, there is not any presumption in favor of detention.

It is the belief of the undersigned counsel that after this Court engages in a review of the facts before this Court, and the Magistrate's order (pursuant to Local Rule 74.1 for the United States District Court of the Western District of Missouri), this Court should find that the government has failed to produce clear and convincing evidence of risk of flight or danger as required by 18 U.S.C. § 3142.

## *CONCLUSION*

Ms. Yassin's current detention violates the policies of the Bail Reform Act of 1984, 18 U.S.C. §§ 3141, *et seq*, and is not based on clear and convincing evidence of dangerousness or risk of flight.

6

WHEREFORE, Ms. Yassin moves that the District Court conduct a de novo review of the evidence before the Magistrate, including all hearing transcripts, and revoke the Magistrate's order that Ms. Yassin be detained pending the resolution of this case. Ms. Yassin moves this Court to grant her a pretrial release pending the resolution of this case or, in the alternative, an evidentiary hearing before the District Court as to the issue of pretrial detention.

        Respectfully submitted,

*/s/ Ian A. Lewis*
**IAN A. LEWIS, #52819**
Assistant Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
Attorney for Defendant

March 18, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants in this case, and a copy was mailed, via the United States Postal Service, to all non-CM/ECF participants.

*/s/ Ian A. Lewis*
**IAN A. LEWIS**